EUGENIA G. MAYNARD, *Ex'x vs.* ELLIOTT BUICK INC. *et al.*

JUNE 7, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. This is a bill in equity brought by the complainant individually and as executrix under the will of her husband Edward C. Maynard against Elliott Buick Inc. (hereinafter referred to as "Elliott"), a Rhode Island corporation, Auto Owners Finance Company, Incorporated (hereinafter "Auto Owners"), a Connecticut corporation doing business in Rhode Island, and Resolute Credit Life Insurance Company (hereinafter "Resolute"), a Rhode Island corporation.

The cause was heard by a superior court justice on bill, answer and proof and thereafter a final decree was entered ordering Resolute to pay complainant in her capacity as executrix $2,040.48, and Elliott to pay her $1,369.74, both

awards to bear interest from the date of the death of the complainant's husband. It is before us on appeals by Elliott and Resolute from the entry of such decree.

In substance, the transcript sets forth the following series of events. On March 10, 1959 Edward Maynard, complainant's deceased husband, visited Elliott to have repairs made on his 1956 Buick automobile. There he was induced by a Mr. Firestone to purchase a new 1959 Buick LeSabre then in Elliott's possession. The 1956 Buick was taken in trade and Mr. Maynard executed a bill of sale transferring title thereto to Elliott. For the balance due on the LeSabre, a conditional sales contract, part of which was a promissory note, was entered into by the two parties. It appears that at the same time Mr. Maynard agreed to having the transaction financed, and as a part thereof applied to Resolute for a life insurance policy thereon.

Mr. Maynard was then given one of Elliott's demonstration automobiles to use until the LeSabre was ready for delivery. That night he told his wife of the purchase. Upon learning that there would be no power steering in the new car, she persuaded her husband to change his selection. Accordingly, the next day complainant and her husband visited Elliott and requested the change. Mr. Firestone offered to have power steering installed in the LeSabre chosen the day before, but complainant insisted on a car which had had power steering installed directly at the factory.

Unable to interest them in any automobile equipped with power steering already in Elliott's possession, Mr. Firestone placed a call to Boston, Massachusetts, located a new Buick agreeable to the Maynards and informed Mr. Maynard that his automobile would be ready for delivery on March 13, 1959. It is significant that while the parties agreed to the change in selection and to the extra cost involved, no new written agreement was entered into. During this visit, complainant asked if she could use the 1956 Buick traded in

the day before because "It was easier to drive than the demonstrator." She was informed this was impossible since that car had been sold the previous day.

Although the exact date that Elliott forwarded the conditional sales contract to Auto Owners is not shown, it is undisputed that the contract was received through the mail by the latter on March 13, 1959. While it is not precisely known when Auto Owners credited Elliott on the contract, it is likewise undisputed that Elliott was so credited in the normal course of the former's business activity. Included in the financing charges on the contract was a premium of insurance on the life of Mr. Maynard, the insurer being Resolute. The insurance extended to any balance owing on the contract at the time of death, with Auto Owners as primary and complainant as secondary beneficiaries.

On March 13 Edward Maynard passed away. The next day, because they had not appeared to accept delivery as planned, Mr. Firestone called the Maynard residence and learned of the death. It was agreed that delivery of the new Buick would be delayed until after March 17, the date of Mr. Maynard's funeral. On March 14 Auto Owners received a telephone call from Elliott to the effect that the mailing of the conditional sales contract had been a ministerial error, that it should be canceled by it and that another contract would be forthcoming. It was not until April 3, 1959 that an entry indicating cancellation was made by Auto Owners.

Sometime during the day, after Mr. Maynard's funeral, complainant and her son called on Mr. Firestone. Because of the change in circumstances complainant asked if the contract could be canceled and the 1956 Buick returned. According to complainant's testimony Mr. Firestone replied that a binding contract still existed, but even so return of the 1956 Buick was impossible. The complainant's son then asked if Elliott would deliver the Buick LeSabre. They were told that it had been sold on March 11, the same day

the parties agreed on the Buick with power steering.

When request was made for the Buick which had been ready for delivery on March 14, Mr. Firestone responded that delivery could not be made until some "technicalities" were cleared up. It appears that there was some doubt on the part of Resolute concerning the force and effect of the conditional sales contract. Sometime later Elliott again came into possession of the 1956 Buick and offered to return it to complainant. A letter dated May 8, 1959 to this effect was received by her attorney. The offer was refused. About the end of March complainant returned the demonstrator automobile to Elliott.

The complainant further testified, without contradiction, that no written notice of cancellation of either the conditional sales contract or the insurance policy was ever received. Also a part of the record are Mr. Maynard's signed uncanceled copy of the conditional sales contract, a payment book sent to him by Auto Owners together with a form letter acknowledging the assignment of the contract from Elliott, and an insurance policy from Resolute which had been delivered to Mr. Maynard.

While complainant alleges in her bill most of the events related above, no mention is made of the March 11 visit, the matters relating to the power steering, or the automobile ordered from Boston. It would appear from a reading thereof that complainant was suing on the conditional sales contract, the failure of Elliott to deliver the original new LeSabre car, the failure of Resolute to pay the proceeds of the policy in accordance with its terms, and damages resulting from both breaches. The bill invokes the aid of the equity court in that the various respondents "upon information and belief * * * are under the control of the same person or group of persons, and * * * have acted in concert to deprive your complainant of the benefits of the purchase * * * and of the benefits provided by said policy of life insurance * * *."

In substance the bill prays that Resolute be ordered to pay the proceeds of the insurance policy to Auto Owners, with interest, and any excess to complainant; that upon receipt thereof Auto Owners be ordered to cancel and discharge the obligation of complainant's testator under the said contract and accompanying promissory note; that Elliott be ordered to deliver a 1959 Buick LeSabre identical to the one contracted for or to pay $2,040.48 plus the trade-in value of the 1956 Buick; that Elliott and Resolute be ordered to pay complainant the damages resulting from the breach of their respective contracts with the testator; and that complainant be awarded such other relief as deemed just by the court.

In addition to ordering certain payments by Resolute and Elliott, the decree orders Auto Owners to discharge the obligations of the testator under the conditional sales contract and promissory note assigned and transferred to it by Elliott and to deliver the same to complainant as executrix. It further orders complainant, upon said payment to her by Resolute, to deliver to Resolute the policy of life insurance, and it awards costs to complainant against Resolute and Elliott, the two to share the burden equally. The decree also provides, "That no determination is made by the Court as to the equities of the cause with reference to the several respondents, as between themselves."

Elliott and Resolute assign as their reasons of appeal that the decree is against the law, the evidence, the law and the evidence and the weight thereof; that it is improperly entered in that the court improperly denied the respondents' respective motions to dismiss; that complainant has an adequate remedy at law and the equity court is therefore without jurisdiction; and that the court improperly prevented respondents from showing the market value of the 1956 Buick and the actual purchase price of the 1959 Buick so as to show the actual trade-in price allowed.

After complainant had completed the presentation of her evidence, the various respondents moved to dismiss the bill under the provisions of G. L. 1956, §9-14-22. In part, that section reads, "the respondent may move for a dismissal of the action, on the ground that upon the facts and the law the complainant has shown no right to relief, without waiving the right to offer evidence in the event that the motion is not granted." The motions of Elliott and Resolute were denied. In our opinion the denials constituted error.

A reading of the bill would appear to justify complainant's recourse to equity, since she alleges that all respondents "are under the control of the same person or group of persons, and * * * have acted in concert to deprive your complainant of the benefits of the purchase * * * and of the benefits provided by said policy of life insurance * * *." It is clear from the record, however, that the most complainant shows in support of her allegations is that Elliott frequently, but not always, discounts transactions of this nature with Auto Owners, and further there appears to exist some mutuality of interest between Auto Owners and Resolute. There is, however, no evidence of any nature that all respondents are subject to the control of any one individual, or group, nor that they acted in concert to deprive complainant of the benefit of any contract or contracts which may have been in force. Indeed, the trial justice in his decision appears to have dismissed any question of concerted action since he specifically leaves all respondents to litigate their respective claims against each other.

In our opinion, the real issues in the case have been clouded by the pleadings. They become more apparent when viewed in the light of the complainant's failure to justify her presence in equity for, while she fails at that, the evidence she does present points clearly to an adequate remedy at law.

The appeals are sustained, the decree appealed from is reversed, and the cause is remanded to the superior court

with direction to enter a new decree denying and dismissing the bill of complaint.

CONDON, C. J., and ROBERTS, J., dissent.

MOTION FOR REARGUMENT.
JUNE 20, 1961.

PER CURIAM. After our opinion herein was filed the complainant by permission of the court presented a motion for leave to reargue, setting forth therein certain reasons on which she bases her contention that justice requires a reargument of the cause.

Upon consideration of such reasons, we are of the opinion that they are of sufficient importance to warrant a reargument of the cause.

Motion granted.

HEARD ON REARGUMENT.
MARCH 12, 1962.

POWERS, J. After our decision in the above case, *Maynard v. Elliott Buick Inc.,* 93 R. I. 73, 171 A.2d 452, the complainant by permission of the court filed a motion for reargument.

We granted the motion and allowed her to reargue on the following questions:

"1. The Court in its opinion sustained the appeals of the two respondents solely on the ground that the complainant had an adequate remedy at law. At page 7 of the opinion [93 R. I. at page 78, 171 A.2d at page 455], the Court pointed out the allegations of the bill of complaint that the respondents were under the control of the same person or group of persons and had acted in concert to deprive the complainant of the benefits of the purchase of the automobile and the benefits provided by the life insurance policy. The Court

apparently felt that this allegation was the sole basis on which the jurisdiction of equity was invoked. As a matter of fact, as appears from the prayers in the bill, the jurisdiction of equity was invoked because there was a conditional sale contract and promissory note outstanding executed by the complainant's testator the obligation of which would have to be satisfied by the respondent insurance company before the respondent Elliott Buick Inc. could be expected to deliver a new Buick or to pay the value of a new Buick.

"2. Complainant has always assumed that conditional relief cannot be obtained in an action of law. In such action only a money judgment can be obtained. In this situation, as appears from the transcript of testimony, respondent Elliott Buick Inc. did refund to respondent Auto Owners Finance Company the amount paid when the conditional sale contract was discounted, but it is clear that the promissory note and conditional sale contract are still outstanding and that no action was taken by either of the two respondents concerned with the conditional sale contract to release the estate of Edward C. Maynard from its obligations.

"3. The primary beneficiary under the insurance policy issued by Resolute Credit Life Insurance Company was respondent Auto Owners Insurance Company. Until the insurance company satisfied the obligation under the conditional sale contract to Auto Owners Finance Company, the complainant would have no right to recover under the insurance policy.

"4. Complainant sought relief in a cause in equity because of the fact that action was necessary as between the respondents before complainant could have an adequate remedy. In other words, the obligation of the conditional sale contract had to be satisfied by the insurance proceeds before complainant would be entitled to delivery of the automobile or payment of its value.

"5. Complainant respectfully submits that the Court failed to appreciate that even after the dealings between respondents Auto Owners Insurance Company and Resolute Credit Life Insurance Company regard-

ing the conditional sale contract, the contract remained in the possession of Auto Owners Insurance Company and it is clear from the testimony that nothing was done to satisfy the obligation of Edward C. Maynard or his estate under the combined promissory note and conditional sale contract.

"6. Complainant is at a loss to understand just how, without resorting to equity proceedings, she will be able to have the obligation of her testator under the promissory note and conditional sale contract discharged. If Complainant brings an action at law against Elliott Buick Inc. and an action at law against Resolute Credit Life Insurance Company she will be faced with the fact that the primary beneficiary under the insurance company is respondent Auto Owners Finance Company. It would seem that the only way complainant can have the obligation under the conditional sale contract discharged will be by successfully defending a third action at law brought by the holder of the contract.

"7. In view of the above considerations Complainant respectfully urges that the situation as it existed at the time the bill of complaint was filed and as it now exists from the facts recited in the Court's opinion can only be adequately handled to do justice between the parties in the manner set forth in the final decree which this Court has reversed."

At the reargument the parties presented briefs and were heard orally. After careful consideration we are of the opinion that the complainant has not shown that in reaching our conclusion concerning the questions stated we either overlooked or misconceived the significance of these arguments in our original opinion.

There being no necessity for changing our conclusion, the cause is remanded to the superior court with direction to enter a new decree denying and dismissing the bill of complaint in accordance with our original opinion.

CONDON, C. J., and ROBERTS, J., dissent.

*Higgins & Slattery, James A. Higgins,* for complainant.

*Leonard Decof,* for respondent Elliott Buick Inc.

*Newton and Brodsky, Mortimer W. Newton, John M. Booth,* for respondent Resolute Credit Life Insurance Company.